# Exhibit 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| ALEXUS MURPHY, MARKITTA WITHCER, and DIANE HAINES, individually and on behalf of all others similarly situated,<br><br><br>Plaintiff,<br><br><br>v.<br><br>ACTIVE INTEREST MEDIA, INC.,<br><br><br><br>Defendant. | Case No. 22-cv-12159<br><br>Hon. David M. Lawson<br>Mag. Anthony P. Patti |

**<u>PLAINTIFF'S NOTICE OF SUPPLEMENTAL AUTHORITY</u>**

1.     Counsel for Plaintiff in the above-referenced matter write to inform the Court of the recent ruling in *Briscoe v. NTVB Media Inc.*, Case No. 4:22-cv-10352, ECF No. 41 (E.D. Mich. Mar. 3, 2023) ("*Briscoe*"). The opinion is attached hereto as Exhibit A. On March 3, 2023, Magistrate Judge Kimberly G. Altman issued a Report and Recommendation to Deny Defendant's Motion to Dismiss and Motion to Certify Question in *Briscoe.*

2.     In *Briscoe*, Magistrate Judge Altman rejected many of the same arguments raised by the Defendant in its pending Motion to Dismiss.  Specifically:

a.     Magistrate Judge Altman expressly declined to follow *Nashel v. New York Times*, 2022 WL 6775657 (E.D. Mich. Oct. 11, 2022) and *Wheaton v. Apple Inc.*, 2019 WL 5536214 (N.D. Cal. Oct. 25, 2019), and instead held that *Horton v. GameStop Corp.*, 380 F. Supp. 3d 679 (W.D. Mich. 2018) and *Piper v. Talbots, Inc.*, 507 F. Supp. 3d 339 (D. Mass. 2020) were "more persuasive." *Briscoe* at PageID.2693-2698.   Accordingly, Magistrate Judge Altman held that the operative complaint in *Briscoe* (which is nearly identical to the operative complaint in this case) stated a claim for relief under the PPPA.  *See id.* at PageID.2698.

b.     Magistrate Judge Altman held that PPPA claims are governed by the six-year statute of limitations in M.C.L. § 5813.  *See id.* at PageID.2708-2714. Magistrate Judge Altman also held that certifying the statute of limitations question

to the Michigan Supreme Court was inappropriate under the circumstances. *Id.* at PageID.2716-2718.

        c.    Magistrate Judge Altman held that Michigan Executive Order 2020-58 and Michigan Supreme Court Administrative Order 2020-3 operate to toll the statute of limitations in the matter for 101 days. *Id.* at PageID.2715-16 (citing *Carter v. DTN Mgmt. Co.*, -- N.W.2d --, No. 360772, 2023 WL 439760, at *1 (Mich. Ct. App. Jan. 26, 2023).

Dated: March 6, 2023        Respectfully submitted,

E. Powell Miller (P39487)
THE MILLER LAW FIRM, P.C.
950 W. University Drive, Suite 300
Rochester, MI 48307
Tel: 248-841-2200
epm@millerlawpc.com

Joseph I. Marchese
Philip L. Fraietta (P85228)
BURSOR & FISHER, P.A.
888 Seventh Avenue
New York, New York 10019
Tel: 646.837.7150
Fax: 212.989.9163
jmarchese@bursor.com
pfraietta@bursor.com

Frank S. Hedin
David W. Hall
HEDIN HALL LLP
1395 Brickell Avenue, Suite 1140
Miami, Florida 33131
Tel: 305.357.2107
Fax: 305.200.8801
fhedin@hedinhall.com
dhall@hedinhall.com

*Counsel for Plaintiffs and the Putative Class*

# Exhibit A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EDWARD BRISCOE, LINDA
BALLARD, ANTHONY
DEBERRY, GLADYS WAITERS,
ANTHONY DEBERRY, GREG
DONAHOE, and SUSAN
VINCENZO, individually and on
behalf of all others similarly
situated,

Plaintiffs,

v.

NTVB MEDIA INC.,

Defendant.

_____/

Case No. 4:22-cv-10352
District Judge F. Kay Behm
Magistrate Judge Kimberly G. Altman

**REPORT AND RECOMMENDATION
TO DENY DEFENDANT'S MOTION TO DISMISS
THE THIRD AMENDED COMPLAINT (ECF No. 20)
AND
TO DENY DEFENDANT'S MOTION TO CERTIFY
QUESTION AND STAY PROCEEDINGS (ECF No. 21)**

I.      Introduction

This is a consumer's rights case under Michigan's Preservation of Personal

Privacy Act ("PPPA"), M.C.L. § 445.1712, *et seq*.  Plaintiffs, on behalf of

1

themselves and others similarly situated,[1] are suing defendant NTVB Media Inc. (NTVB) claiming that NTVB violated the PPPA by disclosing their subscriptions to its publication *TV Weekly* to third parties interested in subscriber data for advertising purposes.  *See* ECF No. 19, Third Amended Complaint.

NTVB has moved to dismiss the Third Amended Complaint under Rule 12(b)(1) and 12(b)(6) on the grounds that: (1) Plaintiffs do not allege facts to plausibly support their claim NTVB violated the PPPA; (2) the out-of-state Plaintiffs have no claim under the PPPA, and after dismissal of the out-of-state claims, the Court lacks subject matter jurisdiction over the remaining claim by a Michigan resident against a Michigan corporation with its principal place of business in Michigan; and (3) Plaintiffs' claims are time-barred.  (ECF No. 20).  NTVB has also moved to certify the question of which statute of limitations applies to PPPA claims to the Michigan Supreme Court and to stay proceedings.  (ECF No. 21).  Both motions have been referred to the undersigned.  (ECF No. 40).  The motions have been fully and thoroughly briefed, *see* ECF Nos. 26, 28, 32, 33,[2] and an in-person hearing was held on February 8, 2023.  For the reasons that follow, the undersigned RECOMMENDS that NTVB's motions be DENIED.

---

[1] Plaintiffs seek class action status but have not yet filed a motion for class certification.

[2] Plaintiffs also filed a notice of supplemental authority on the issue of tolling. (ECF No. 39).

## II.     Background

The Third Amended Complaint contains the following allegations, which are presumed true when considering a motion to dismiss.

The named Plaintiffs are Edward Briscoe (Briscoe), Linda Ballard (Ballard), Anthony DeBerry (DeBerry), Gladys Waiters (Waiters), Greg Donahoe (Donahoe), and Susan Vincenzo (Vincenzo).  (ECF No. 19).  In their Third Amended Complaint, they allege that NTVB "rented, exchanged, and/or otherwise disclosed personal information about Plaintiffs' *TV Weekly* magazine subscriptions, from within the State of Michigan, to data aggregators, data appenders, data cooperatives, and list brokers, among others, which in turn disclosed their information to aggressive advertisers, political organizations, and non-profit companies."  (*Id*., PageID.1711).  They also allege that NTVB "sold, rented, and/or otherwise disclosed . . . the Personal Reading Information [PRI][3] of its other subscribers to *TV Weekly* magazine and NTVB's other publications during the relevant pre-July 31, 2016[4] time period," and that these acts were in violation of

---

[3] Plaintiffs define PRI as an individual's full name, titles of publications subscribed to, and home address.  (ECF No. 19, PageID.1713).  Plaintiffs also allege that a "myriad [of] other personal and demographic information such as gender and income" was also unlawfully disclosed.  (*Id*.).

[4] Plaintiffs' claims encompass the time period between the earliest applicable date under the statute of limitations, which will be discussed below, and July 31, 2016, at which time the amendment to the PPPA (also discussed below) became effective.

3

the pre-amendment PPPA.

NTVB is headquartered in Michigan, with its principal place of business in Michigan, and is therefore a citizen of Michigan. (ECF No. 19, PageID.1714-1726). One of the named Plaintiffs, Donahoe, resides in Michigan. (*Id.*). The other named Plaintiffs reside in Nevada, Illinois, Georgia, and Pennsylvania. (*Id.*).

As evidence in support of their allegations, Plaintiffs attach a document entitled "NTVB Media Entertainment Enhanced Masterfile Mailing List" from a list broker named NextMark, Inc., which purports to disclose the PRI of 265,588 of NTVB's active U.S. subscribers for the base price of $110 per thousand users. (*Id.*, PageID.1712; ECF No. 19-2). The document states that its subscriber counts were effective "THROUGH 03/31/2022." (ECF No. 19-2). Plaintiffs allege that NTVB, a business engaged in the selling of written materials, disclosed their protected PRI without their informed consent, as was required under the pre-amendment PPPA §2, and that each Plaintiff and presumptive class member is entitled to $5,000 in damages under pre-amendment PPPA §5, in addition to costs and reasonable attorney fees. (ECF No. 19, PageID.1741-1746).

NTVB argues that Plaintiffs have failed to state a claim with specificity; that choice of law principles prevent the out-of-state Plaintiffs from bringing PPPA claims, which defeats federal jurisdiction over this matter; and that under Michigan law, a three-year statute of limitations applies to claims brought under the PPPA

4

and bars Plaintiffs' claims.  NVTB also argues that to the extent the issue of the statute of limitations is unclear, certification to the Michigan Supreme Court is appropriate.

### III.    The PPPA

The history of the PPPA has been well-summarized by another court in this district as follows:

> In 1988, Michigan enacted the PPPA shortly after the enactment of the federal Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710. Congress passed the VPPA to "preserve personal privacy with respect to rental, purchase, or delivery of video tapes or similar audio-visual materials," S. Rep. No. 100-599, at 1 (1988), reprinted in 1988 U.S.C.C.A.N. 4342-1.

> Like the VPPA, Michigan's bill aims to "preserve personal privacy with respect to the purchase, rental, or borrowing" of written materials, sound recordings, and video recordings. 1988 Mich. Pub. Acts No. 378 at p. 1559.  The PPPA addresses many concerns related to an "unwarranted invasion of privacy."  House Legislative Analysis, Privacy: Sales, Rentals of Videos, Etc., H.B. 5331, (Jan. 20, 1989) ("Many in Michigan also believe that one's choice in videos, records, and books is nobody's business but one's own, and suggest the enactment of a statute to explicitly protect a consumer's privacy in buying and borrowing such items").

> In 2016, the Michigan legislature amended the PPPA.  Mich. Comp. Laws § 445.1711 *et seq.*).  However, the Court reviews the PPPA prior to its 2016 amendment because defendant's alleged wrongful disclosures preceded the amended statute's enactment. The subsequent amendments do not apply retroactively to claims that accrued prior to its effective date. *Coulter-Owens v. Time Inc.*, 695 F. App'x 117, 121 (6th Cir. 2017) ("The new PPPA does not contain any express statement of intended retroactivity . . . and given the extensive substantive changes . . . it cannot be viewed as merely a "clarifying" amendment intended for retroactive application.")

5

The PPPA, prior to its amendment, prohibited persons "engaged in the business of selling at retail, renting, or lending books or other written materials, sound recordings, or video recordings" from disclosing material "to any person, other than the customer, a record or information concerning the purchase, lease, rental, or borrowing of those materials by a customer that indicates the identity of the customer." PPPA § 2. A "record or information" could be disclosed only in circumstances listed in Section Three of the PPPA. Prior to the amendment, those exceptions included disclosure "[w]ith the written permission of the customer"; "[p]ursuant to a court order" or "a search warrant"; "[t]o the extent reasonably necessary to collect payment for the materials"; and for the "exclusive purpose of marketing goods and services directly to the consumer," if the disclosing party informed "the customer by written notice that the customer may remove his or her name at any time by written notice to the person disclosing the information." *Id.* § 3.

A customer "identified in a record or other information disclosed in violation" of the PPPA can sue to recover "[a]ctual damages, including damages for emotional distress, or $5,000, whichever is greater." PPPA § 5.

*Lin v. Crain Commc'ns, Inc.*, No. 19-11889, 2020 WL 248445, at *2 (E.D. Mich. Jan. 16, 2020) (Roberts, J.).

### IV. Standards for Dismissal

Challenges to the Court's subject matter jurisdiction are brought under Federal Rule of Civil Procedure 12(b)(1). A party opposing a Rule 12(b)(1) motion "bears the burden of proving jurisdiction." *EEOC v. Hosanna–Tabor Evangelical Lutheran Church & Sch.*, 597 F.3d 769, 776 (6th Cir. 2010), *rev'd on other grounds*, 565 U.S. 171 (2012). Dismissal under Rule 12(b)(1) is appropriate where a plaintiff lacks standing. *Ward v. Alt. Health*

6

*Delivery Sys., Inc.*, 261 F.3d 624, 626 (6th Cir. 2001). A facial 12(b)(1) attack, like the one here, "questions merely the sufficiency of the pleading," and requires the Court to "take[ ] the allegations in the complaint as true." *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007) (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)).

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "construe the complaint in the light most favorable to plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action"). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *16630 Southfield Ltd., P'Ship v.*

7

*Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

V.     Analysis

A.     Failure to State a Claim

NTVB argues that Plaintiffs have not plausibly alleged that it disclosed their

information and rather than "show[ing] *entitlement* to relief," have done nothing

more than "create speculation or suspicion of a legally cognizable cause of

action[.]" *LULAC v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in

original).  In other words, NTVB is arguing that the Third Amended Complaint

fails to state a viable claim under Rule 12(b)(6).

In response, Plaintiffs argue that they have met their burden under Rule 8 in

stating a "short and plain statement" that they are entitled to relief and have

sufficiently alleged a violation of the PPPA to survive dismissal.  Plaintiffs also

argue that under Rule 12(g)(2), NTVB has forfeited the right to raise this defense,

as it was not raised in NTVB's prior motion to dismiss an earlier version of the

complaint.

1.     NTVB's Ability to Raise 12(b)(6) as a Defense

Plaintiffs argue that NTVB's motion to dismiss for failure to state a claim

should be deemed waived under Rule 12(g)(2), which states that "[e]xcept as

provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must

not make another motion under this rule raising a defense or objection that was

8

available to the party but omitted from its earlier motion."

Plaintiffs filed a Second Amended Complaint on August 4, 2022, (ECF No. 14), to which NTVB responded with a motion to dismiss, (ECF No. 17).  In that motion, NTVB argued that the out-of-state Plaintiffs could not invoke the PPPA against NTVB, that the Court lacked jurisdiction over the in-state Plaintiff if the out-of-state Plaintiffs' claims were dismissed, and that Plaintiffs had filed outside of the three-year statute of limitations.  It did not argue that Plaintiffs failed to state a claim.  *See* ECF No. 17.  Days later, Plaintiffs filed their Third Amended Complaint, (ECF No. 19), which NTVB now moves to dismiss on the grounds, among other things, of failure to state a claim.  (ECF No. 20).  The issue is whether NTVB is prevented from asserting failure to state a claim as grounds to dismiss the Third Amended Complaint when it did not move to dismiss the Second Amended Complaint on this ground.

Plaintiffs contend that under Rule 12(g)(2), NTVB may not utilize this defense when it could have been raised, and was not, in a prior pre-answer motion or pleading.  NTVB does not argue that the defense was unavailable at that time, but says that between the filing of Plaintiffs' Second and Third Amended Complaints, *Nashel v. New York Times*, No. 2:22-cv-10633, 2022 WL 6775657 (E.D. Mich. Oct. 11, 2022) (Murphy, J.) was decided, where a similar claim under the PPPA was dismissed for failure to state a claim.

9

In support, Plaintiffs cite *W.G. Tomko, Inc. v. Franklin Cnty. Bd. of Comm'rs*, No. 2:13-CV-0055, 2014 WL 347037, at *5 (S.D. Ohio Jan. 30, 2014), where an improper venue defense was subject to waiver because it was not raised in the answer to the original complaint.[5] Like here, the defendants filed a motion to dismiss an amended complaint, but the court found that "[t]he filing of an amended complaint will not revive the right to present by motion defenses that were available but were not asserted in timely fashion prior to the amendment of the pleading." *Id*. (citing 5C Charles Alan Wright, Federal Practice & Procedure § 1388, at 491 (4th ed. 2009)).

Plaintiffs also cite *JRS Partners, GP v. Leech Tishman Fuscaldo & Lampl, LLC*, No. 3:19-CV-00469, ___ F. Supp. 3d ___, ___, 2022 WL 2793340, at *20 (M.D. Tenn. July 14, 2022), a case with a similar procedural posture where the defendants raised a defense in a motion to dismiss the amended complaint that they failed to raise in a motion to dismiss the original complaint. In *JRS Partners*, the defense at issue was the statute of limitations, and the court found that the defense was "barred by Rule 12(g) because those arguments could have been raised in Defendants' respective first motions to dismiss, but were not." *Id*. at *21. Similarly to *Tomko*, the district court found that the filing of an amended complaint

---

[5] The district court ultimately found that the improper venue defense was not waived because it did not apply to the allegations in the original complaint.

did not revive defenses that were not raised, and therefore waived, as to the prior complaint. *Id*.

NTVB notes that some courts look to the general rule, and not the specific legal argument relied upon, to determine if a defense has been waived. Under this approach, since NTVB's prior motion was based in part on Rule 12(b)(6), if not the discrete ground of failure to state a claim, NTVB may raise additional legal arguments that fall under Rule 12(b)(6) in subsequent motions. *See, e.g.*, *Premier Dealer Servs. v. Allegiance Adm'rs, LLC*, No. 2:18-cv-735, 2019 WL 1981864, at *4 (S.D. Ohio May 3, 2019) ("Because [the defendant] raised a Rule 12(b)(6) defense in its original pre-answer motion, its Rule 12(b)(6) defense was not waived in its Second Motion to Dismiss."); *McGlone v. Centrus Energy Corp.*, No. 2:19-CV-02196, 2022 WL 974381, at *5 (S.D. Ohio Mar. 31, 2022) (same).

Rule 12(g)(2) "is intended to eliminate unnecessary delays at the pleading stage of a case by avoiding the piecemeal consideration of pretrial motions." *Rauch v. Day & Night Mfg. Corp.*, 576 F.2d 697, 701 (6th Cir. 1978). However, where subsequent motions are not "intended for purposes of delay or harassment" and adjudication of the motion's merits "will greatly expedite the resolution of the pending dispute," the Court may, "in the interest of promoting efficiency . . . choose[] to exercise its discretion and proceed to the merits" of the motion. *Davis v. City of Dearborn*, No. 2:09-CV-14892, 2010 WL 3476242, at *4-5 (E.D. Mich.

Sept. 2, 2010); *see also* 2A James Wm. Moore et al., Moore's Federal Practice ¶ 12.22, at 12–192 (2d ed. 1981) ("A Court might properly entertain [a] second motion [to dismiss] if convinced that it is not interposed for delay and that the disposition of the case on the merits can be expedited by so doing.").

As NTVB notes, other Circuit Courts have not strictly applied Rule 12(g) where the waived defense could be raised later under Rule 12(c). *See In re Apple iPhone Antitrust Litig.*, 846 F.3d 313, 318 (9th Cir. 2017), *aff'd sub nom. Apple Inc. v. Pepper*, 203 L. Ed. 2d 802, 139 S. Ct. 1514 (2019) ("Denying late-filed Rule 12(b)(6) motions and relegating defendants to the three procedural avenues specified in Rule 12(h)(2) can produce unnecessary and costly delays, contrary to the direction of Rule 1."); *Leyse v. Bank of Am. Nat. Ass'n*, 804 F.3d 316, 321-22 (3d Cir. 2015) ("So long as the district court accepts all of the allegations in the complaint as true, the result is the same as if the defendant had filed an answer admitting these allegations and then filed a Rule 12(c) motion for judgment on the pleadings, which Rule 12(h)(2)(B) expressly permits."); *Albers v. Bd. of Cnty. Comm'rs of Jefferson Cnty., Colo.*, 771 F.3d 697, 704 (10th Cir. 2014) ("[W]hether the district court dismissed the complaint based on a motion under Rule 12(b)(6) or Rule 12(c) makes no difference for purposes of our review. Therefore, any procedural error that may have been committed would be harmless and does not prevent us from reaching the merits of the district court's decision.").

At the hearing, Plaintiffs suggested that NTVB sought to avoid a Rule 12(c) motion in the interest of avoiding discovery, which would bolster their claims. However, the Third Amended Complaint was filed shortly after NTVB's first motion to dismiss, the first motion to dismiss was not adjudicated, and a relevant decision in *Nashel* was issued between the filing of the prior complaint and the operative one. Under these circumstances, finding NTVB's argument waived would likely result in it being raised later under Rule 12(c), which would not promote efficiency. Thus, the undersigned recommends that the Court exercise its discretion and consider NTVB's failure to state a claim argument now.

### 2.      The Merits of the Defense

NTVB contends that Plaintiffs' allegations do no more than create suspicion of a cause of action, which does not satisfy the pleading requirements under the Federal Rules or Sixth Circuit authority. *LULAC*, 500 F.3d at 527 and *Bishop v. Lucent Techs., Inc*., 520 F.3d 516, 520 (6th Cir. 2008). NTVB says that Plaintiffs' allegation that it disclosed "their full names, titles of publications subscribed to, and home addresses" to third parties between February 17, 2016, and July 30, 2016 is not supported by corroborating factual allegations and is a legal conclusion that the Court is not required to accept. The "sole" factual allegation supporting Plaintiffs' claims according to NTVB is a screenshot from a third party, NextMark, of an "NTVB Media Entertainment Enhanced Masterfile Mailing List" containing

13

data that presumably came from NTVB, but dated March 31, 2022, which is more than six years *after* the time period of Plaintiffs' claims. (ECF No. 19-2, PageID.1753).

NTVB compares this case to *Nashel v. New York Times Co.*, *supra*, which was a similar case brought under the PPPA by the same attorneys representing Plaintiffs here. In *Nashel*, the district court found that similar "data cards" (referring to evidence like the NextMark sales document at issue here) predating the relevant time period were too speculative to support the plaintiffs' claims. *Id.* at *5. The district court explained that the bare allegation that the defendant "continued to systematically engage[] in the same wholesale disclosure practices as advertised in the 2007 and 2008 data[ ]cards over the course of the next decade plus" did not satisfy the plausibility requirements of *Twombly* and *Iqbal*. *Id.*

The district court in *Nashel* also found that the data card did not indicate where the allegedly violative information originated. Plaintiffs argued that it "necessarily originated from" the defendant and that it must have been disclosed by the defendant at some point in order to be available to third parties. However, the district court concluded this to be "a large inferential leap" and therefore the complaint was subject to dismissal. *Id.*

NTVB also cites *Wheaton v. Apple Inc.*, No. C 19-02883 WHA, 2019 WL 5536214, at *4 (N.D. Cal. Oct. 25, 2019), in which a California district court ruled

14

that similar exhibits did not contain enough information to state a viable claim under Michigan's PPPA or Rhode Island's similar privacy statute. The district court highlighted that the third-party data broker listing (one of the plaintiffs' exhibits) did not contain the name of the third-party broker; the defendant, Apple; or the defendant's app, iTunes, meaning the listing could not be used to establish that the protected information originated from either Apple or iTunes. *Id.*

In contrast to *Nashel* and *Wheaton*, a district court in the Western District of Michigan found that the plaintiff plausibly alleged that the defendant-publisher provided subscription information in violation of the PPPA to a third party, NextMark (the same third party as here), based on a printout from the NextMark website in which NextMark claimed to sell the publication's mailing list. *Horton v. GameStop Corp.*, 380 F. Supp. 3d 679, 682 (W.D. Mich. 2018) (Quist, J.) ("Given that GameStop possessed the *Game Informer* subscription information and that NextMark purported to sell that information, the implication that GameStop disclosed the information to NextMark or other data-mining companies passes the threshold of plausibility."). This line of reasoning was also relied on by a district court in Massachusetts in analyzing a claim under Virginia's version of the PPPA to conclude that the plaintiffs had stated a claim by showing that NextMark offered to sell information from the defendant corporation to other parties. *Piper v. Talbots, Inc.*, 507 F. Supp. 3d 339, 344 (D. Mass. 2020).

15

NTVB cites to *Horton* as well, noting that at the *summary judgment stage*, the defendant was granted judgment as the plaintiffs were unable to substantiate the claims in their complaint. NTVB suggests that based on this resolution, allegations like those in *Horton* and here do not provide a plausible basis for PPPA claims. However, the fact that the defendant in *Horton* prevailed at a later stage of litigation is irrelevant, as evidentiary proofs are not required at this stage of the present litigation. Were this a relevant consideration, it would also be worth noting that Plaintiffs have cited several similar PPPA cases that resulted in large class settlements.[6]

Plaintiffs contend that the allegations of in the Third Amended Complaint create the plausible inference that NTVB sold its subscribers' data in violation of the PPPA during the relevant period. They note that the data card from NextMark (ECF No. 28-2) states that it contains cumulative customer data "THROUGH 03/31/2022," creating the inference that NextMark had data from NTVB at all

---

[6] *See* ECF No. 28, PageID.2539 n.15 (citing *Moeller v. The Week Publications, Inc.*, No. 1:22-cv-10666-TLL-PTM (E.D. Mich.) ($5 million class settlement); *Ketover v. Kiplinger Washington Editors, Inc.*, No. 1:21-cv-12987-TLL-PTM (E.D. Mich.) ($6.8 million class settlement); *Kokoszki v. Playboy Enterprises, Inc.*, No. 2:19-cv-10302-BAF-RSW (E.D. Mich.) ($3.8 million class settlement); *Loftus v. Outside Integrated Media, LLC*, No. 2:21-cv-11809-MAG-DRG (E.D. Mich.) ($850,000 class settlement); *Kain v. The Economist Newspaper NA, Inc.*, No. 4:21-cv-11807-MFL-CI (E.D. Mich.) ($9.5 million class settlement); *James Edwards v. Hearst Communications, Inc.*, No. 1:15-cv-09279-AT-JLC (S.D.N.Y.) ($50 million class settlement); *Hufford v. Maxim Inc.*, No. 1:19-cv-04452-ALC-RWL (S.D.N.Y.) ($228,000 class settlement).

times during the relevant period. They also argue that the post-dated data card here distinguishes this case from *Nashel*, where the data card contained information pre-dating the plaintiffs' claims. Whereas the publisher in *Nashel* may have become compliant with the PPPA after that alleged disclosure, here the data card indicates that NTVB continued to willfully disclose private information as recently as last year.[7]

Considering all of the authority,[8] the undersigned finds the decisions in *Horton* and *Piper* more persuasive than *Nashel* and *Wheaton*. Keeping in mind that a Court "must construe the complaint in the light most favorable to the plaintiff and accept all allegations as true" at this stage, *Keys*, 684 F.3d at 608,

---

[7] Plaintiffs also argue that *Nashel* applied a heightened pleading standard to the PPPA claim in deciding whether the factual allegations were plausible, *Nashel*, 2022 WL 6775657, at *5, instead of assuming the factual allegations were true and deciding " 'whether those allegations, viewed together and with all reasonable inferences drawn in the plaintiff's favor, [were] plausibly suggestive of a claim for relief.' " (ECF No. 28, PageID.2535 n.12 (quoting *Doe v. Mich. State Univ.*, 989 F.3d 418, 425 (6th Cir. 2021)). They further argue that the *Nashel* court "recast allegations that were plainly factual in nature . . . as 'legal conclusions' merely because that underlying conduct happened to give rise to a PPPA claim." (ECF No. 28, PageID.2535 n.12 (quoting *Nashel*, 2022 WL 6775657, at *5)).

[8] Plaintiffs also cite four federal cases regarding similar allegations under the PPPA, two from this district and two from the Southern District of New York, in support of denying NTVB's motion to dismiss. *Perlin v. Time Inc.*, 237 F. Supp. 3d 623 (E.D. Mich. 2017); *Moeller v. Am. Media, Inc.*, 235 F. Supp. 3d 868 (E.D. Mich. 2017); *Boelter v. Hearst Commc'ns, Inc.*, 192 F. Supp. 3d 427 (S.D.N.Y. 2016); *Boelter v. Advance Mag. Publishers Inc.*, 210 F. Supp. 3d 579 (S.D.N.Y. 2016). However, none of these cases assess the sufficiency of the pleadings in a 12(b)(6) context.

Plaintiffs have stated a sufficient claim for relief against NTVB for violating the PPPA. Plaintiffs have alleged specific factual content to create the inference that NTVB sold their data without consent in violation of the statute.

Furthermore, as the court in *Horton* reasoned, the supported allegation that NextMark purports to sell information that would logically have been in the sole possession of NTVB at some point in time suggests that NTVB did in fact disclose that information in contravention of the PPPA. "If a reasonable court can draw the necessary inference from the factual material stated in the complaint, the plausibility standard has been satisfied." *Keys*, 684 F.3d at 610. Plaintiffs allege that this disclosure did in fact occur prior to the July 31, 2016 amendment of the PPPA. This provides fair notice to NTVB of Plaintiffs' claims and the grounds upon which they rest. *See Twombly*, 550 U.S. at 555. Therefore, it is recommended that NTVB's motion to dismiss based on a failure to state a claim be denied.

## B.     Choice of Law/Jurisdiction

### 1.     Overview

NTVB argues that under Michigan choice of law provisions, which govern this diversity action,[9] the state laws of the Plaintiffs' home states should be applied

---

[9] S*ee, e.g.*, *Gass v. Marriott Hotels Servs., Inc*., 558 F.3d 419, 425 (6th Cir. 2009) ("Federal courts sitting in diversity apply the choice of law provisions of the forum

rather than Michigan's PPPA, and that the five out-of-state Plaintiffs should be dismissed. NTVB further says that with the dismissal of the out-of-state Plaintiffs, diversity would be lacking and require that the complaint be dismissed for lack of subject matter jurisdiction. Plaintiffs argue that all Plaintiffs enjoy the protection of the PPPA and therefore diversity jurisdiction exists.

In diversity disputes, the federal district court is "obligated to apply the choice of law rules of the state in which it sits." *Sec. Ins. Co. of Hartford v. Kevin Tucker & Assocs., Inc.*, 64 F.3d 1001, 1005 (6th Cir. 1995) (citation omitted). Under Michigan law, the *lex fori* rule, otherwise known as the "law of the forum" applies to tort claims. *Sutherland v. Kennington Truck Serv., Ltd.*, 454 Mich. 274, 290 (1997); *Burney v. PV Holding Corp.*, 218 Mich. App. 167 (1996). Under *lex fori*, Michigan law applies to tort claims unless "there is a 'rational reason' to displace it." *Scheurer Hosp. v. Lancaster Pollard & Co.*, No. 12–11536, 2012 WL 3065347, at *7 (E.D. Mich. July 27, 2012) (citation omitted).

If a foreign state has an interest in having its law apply, the court must determine "if Michigan's interests mandate that Michigan law be applied, despite the foreign interests." *Id.* (citation omitted). "Although this analysis 'most frequently favors the forum (Michigan's) law, Michigan courts nonetheless use

state. Because Plaintiffs filed this case in the Western District of Michigan, Michigan choice of law provisions apply.") (internal citation omitted).

another state's law where the other state has a significant interest and Michigan has only a minimal interest in the matter.' " *Id.* (quoting *Hall v. Gen. Motors, Corp.*, 229 Mich. App. 580, 585 (1988)).

### 2. Discussion

Plaintiffs argue that the language of the PPPA clearly applies to both residents and nonresidents of Michigan, citing *Lin* v. *Commc'ns*, 2020 WL 248445, at *3. NTVB does not dispute that the statute applies to both residents and nonresidents, but argues that Michigan's *choice of law* doctrine prevents nonresidents from suing under the PPPA, an argument that the defendants in *Lin* explicitly waived.

There is no case law directly on-point regarding whether Michigan's choice of law interest analysis allows for an out-of-state plaintiff to sue a Michigan company under the PPPA. NTVB cites to cases involving standard tort claims to argue that the plaintiff's place of residence and the location of the injury are determinative of the choice of law. *See Frost v. Gen. Motors, LLC*, No. 352720, 2021 WL 3820013, at *5 (Mich. Ct. App. Aug. 26, 2021), *appeal denied,* 509 Mich. 932, 971 N.W.2d 621 (2022) (unpublished opinion) ("Even if Mays resided in Michigan at the time of the incident, because the fire occurred in North Carolina, injured one North Carolina resident, and killed two North Carolina residents, North Carolina certainly had an interest in this case, establishing a

20

rational reason to apply North Carolina law." (citing *Hall*, 229 Mich. App at 585-586); *Harshaw v. Bethany Christian Servs*., No. 08-cv-104, 2010 WL 1692833,[10] 2010 U.S. Dist. LEXIS 41322, at *89 (W.D. Mich. Apr. 26, 2010) ("[T]he Michigan choice-of-law presumption in favor of Michigan law in the Michigan forum has little to no weight when the plaintiffs are from a foreign State and therefore not invoking their home forum."). Taken together, NTVB argues, *Frost*, *Harshaw*, and other similar cases show that a plaintiff's residency at the time of the allegedly infringing act is a significant consideration.

Regarding the location of the injury, NTVB contends that where the harm is somewhat intangible (as is the case here), courts have found that the plaintiff's location, not the defendant's, is where the injury occurred. *See Ruffin-Steinback v. dePasse*, 267 F.3d 457, 463 (6th Cir. 2001) (applying law of the plaintiff's domicile to a defamation claim based on a nationwide broadcast); *Brandon v. Quicken Loans, Inc.*, No. CV 20-10253, 2021 WL 1015830, at *2 (E.D. Mich. Feb. 22, 2021), *report and recommendation adopted*, 2021 WL 983135 (E.D. Mich. Mar. 16, 2021) (applying Tennessee law for intentional infliction of emotional distress claim where infringing text message was sent from a Quicken employee, headquartered in Michigan, to a Tennessee resident). NTVB also contends that a

---

[10] The Westlaw citation currently does not lead to this case, even though the decision is referenced in other cases by this citation.

corporate defendant's location is a "minimal interest" in choosing to apply that state's law, citing a string of products liability cases: *Farrell v. Ford Motor Co.*, 199 Mich. App. 81, 94 (1993) ("Michigan is merely the forum state and situs of defendant's headquarters. Such minimal interests are insufficient to justify the result-oriented forum shopping that has been attempted."); *Standard Fire Ins. Co. v. Ford Motor Co.*, 723 F.3d 690, 699 (6th Cir. 2013) (noting that Ford's substantial connections with Michigan did not mandate application of Michigan law over that of Tennessee, where purchaser was a Tennessee resident, property damage occurred in Tennessee, and Ford also generated substantial commerce within Tennessee); *Hampshire v. Ford Motor Co.*, 155 Mich. App. 143 (1986) (California law applied where accident occurred in California and "connections to Michigan [were] limited to the fact that Ford's headquarters are located in Michigan and the action was filed in this state."); *Hall*, 229 Mich. App. at 583 (North Carolina law applied where resident of North Carolina was injured in North Carolina, though defendant General Motors was headquartered in Detroit, Michigan).

However, in *Humphries v. Allstate Ins. Co.*, No. 18-CV-11006, 2020 WL 3248896, at *12 (E.D. Mich. June 16, 2020) (Drain, J.), the district court found that a claim involving no-fault insurance benefits from a car accident was governed by Michigan law, given Michigan's interest in efficiently regulating insurance claims

22

under the No-Fault Act, even where the injury (a reduction in benefits from defendant Allstate Insurance Company) occurred while the plaintiff resided in Arizona.  And in *Gaillet v. Ford Motor Co.*, No. 16-13789, 2017 WL 1684639, at *6 (E.D. Mich. May 3, 2017) (Edmunds, J.), another products liability case, the district court found that application of Michigan's law prohibiting punitive damages was appropriate due to Ford's Michigan connections, the policy purposes behind Michigan's punitive damage ban, and "the fact that much of the alleged misconduct occurred in Michigan."  Despite the accident in question occurring in Mississippi and the plaintiffs being residents of that state, the court found Mississippi's interest in the case to be slight.  *Id*.  While this decision was specific to the prohibition of punitive damages, the idea that part of the purpose of the law in question was to affect Michigan's corporate domiciliaries is the same here.  However, in *Pina v. Chrysler Grp., L.L.C.*, No. 14-10716, 2014 WL 4112918, at *2 (E.D. Mich. Aug. 19, 2014), *aff'd sub nom. Pina v. FCA U.S. LLC*, 618 F. App'x 820 (6th Cir. 2015), a brief opinion in which the district court applied Indiana's ten-year statute of repose to bar the plaintiff's products liability claim, the court found that design of an automobile in Michigan and Michigan's interest in regulating the automobile industry were irrelevant because these factors have "not been found to mandate the application of Michigan law in similar automotive products liability cases."

23

NTVB also argues that application of the forum state's law should be rejected to avoid forum shopping and giving the statute extraterritorial effect, citing *BMW Stores, Inc. v. Peugeot Motors of America, Inc.*, 860 F.2d 212, 215 (6th Cir. 1988); *Bar's Prods. v. Bar's Prods. Int'l*, No. 10-cv-14321, 2015 WL 5697593 (E.D. Mich. Sept. 29, 2015).  While "[d]iscouraging forum shopping is a legitimate factor in the interest-weighing analysis under Michigan law[,]" *Standard Fire*, 723 F.3d at 699, NTVB has not provided any information regarding the interests of Plaintiffs' home states of Nevada, Illinois, Georgia, and Pennsylvania in preventing their residents from claiming damages under Michigan law from a Michigan corporation.  As Plaintiffs' counsel noted at the hearing, it is difficult to find forum-shopping where there is only one possible forum for Plaintiffs' claims.

In *Sutherland*, the Michigan Supreme Court said that a two-step analysis is required to determine "whether a rational reason to displace Michigan law exists[.]"  *Id*. at 286.

> First, we must determine if any foreign state has an interest in having its law applied.  If no state has such an interest, the presumption that Michigan law will apply cannot be overcome.  If a foreign state does have an interest in having its law applied, we must then determine if Michigan's interests mandate that Michigan law be applied, despite the foreign interests.

*Id*.

Applying this two-step analysis, the undersigned finds that NTVB fails to

meet the first step of showing that another state has an interest in having its law applied. Unlike the cases cited by NTVB, there is no indication here that any of the Plaintiffs' non-Michigan home states have similar laws under which those Plaintiffs could have sued. At the hearing, Plaintiffs' counsel represented that none of the other states where the non-Michigan Plaintiffs reside have a similar law. Further, there is no reason to believe that those states have an interest in denying their residents a claim under the pre-amendment PPPA against a Michigan corporation. And there is no cognizable interest of another state in shielding NTVB from violative conduct under Michigan law. Thus, the presumption that Michigan law applies has not been overcome. The analysis could end here. However, the undersigned will consider the second step of whether Michigan interests mandate the application of Michigan law.

As to the second step, the district court's opinion in *Lin*, *supra*, is instructive. Although the court in *Lin* was not faced with choice of law arguments, the decision spoke to Michigan's interest in having the PPPA applied to Michigan corporations even where one or more plaintiffs resides outside the state of Michigan. The district court in *Lin* found that the PPPA applies to the private information of non-residents as well as residents, explaining that "[t]he plain language of the PPPA provides a cause of action for customers whose information is disclosed in violation of it. . . . If the Michigan legislature intended to limit the

statute to Michigan residents, it could have done so explicitly. *See, e.g.*, M.C.L. §

493.18 ('loans made by mail to Michigan residents are subject to this act')." *Id*.

"To conclude otherwise would imply that the Michigan Legislature intended to

protect in-state parties under the PPPA while simultaneously allowing Michigan

residents to violate the PPPA with respect to out-of-state residents and entities

within its borders. The Court declines to accept such an interpretation." *Id*.

Furthermore, the district court found that, based on a set of facts similar to those

here, "much of the alleged misconduct occurred in Michigan[, as] [the plaintiff]

seeks to recover damages based on the alleged disclosure and sale of [Personal

Reading Information] by a Michigan based company from its Michigan offices."

*Id*. at *5 (citing *Aguirre Cruz v. Ford Motor Co.*, 435 F. Supp. 2d 701, 707 (W.D.

Tenn. 2006)). Finally, the district court found that "Michigan has a substantial

interest in this matter because [the defendant] is one of its corporate domiciliaries."

*Id*. (citing *In re Aircrash Disaster Near Monroe, Mich.*, 20 F. Supp. 2d 1110, 1112

(E.D. Mich. 1998)).

The district court in *Lin* persuasively outlines the interest that Michigan has

in allowing residents and non-residents alike to assert PPPA claims against

Michigan corporations. The PPPA is not only an avenue of relief for Michigan

residents against companies that profit off of sharing private data with other

companies; it is also a regulatory scheme that governs the activities of Michigan

26

entities entrusted with the private data of their users. This is clear from the language of the PPPA, which could easily have limited recovery to Michigan residents, but does not.

In the face of little or no interest from other states in this matter, Michigan's interest mandates application of the default under *lex fori*, which is that Michigan law applies to tort claims made in this State. Michigan law should only be supplanted where another state "has a significant interest and Michigan has only a minimal interest in the matter." *Scheurer Hospital*, 2012 WL 3065347, at *7 (internal quotation marks omitted). Here, the reverse is true. Michigan has a real, significant interest in application of the PPPA to its domiciliaries, and the interest of other states to this action, if any, is minimal. The undersigned therefore recommends that NTVB's motion to dismiss for lack of jurisdiction be denied.[11]

### C.   Statute of Limitations

#### 1.   Overview

Finally, NTVB argues that the three-year statute of limitations for personal

---

[11] NTVB also argues that if the out-of-state Plaintiffs are dismissed on this ground, the only Plaintiff left would be a Michigan resident suing a Michigan company, which would defeat minimal diversity for the purposes of this Court's federal diversity jurisdiction. The Court would then lack subject matter jurisdiction over the claim, as it is based solely on state law, and would be required to dismiss the remaining claim. *Charvat v. NMP, LLC*, 656 F.3d 440, 447 (6th Cir. 2011). Plaintiffs appear to concede this point, but if the Court has jurisdiction over the out-of-state Plaintiffs' claims under the PPPA as the undersigned suggests, it is irrelevant.

injury actions applies and bars Plaintiffs' claims because they sound under claims for injury from invasion of personal privacy, which are governed by M.C.L. § 600.5805(2). Where "the allegations in the complaint affirmatively show that the claim is time-barred . . . dismissing the claim under Rule 12(b)(6) is appropriate." *Cataldo v. U.S. Steel Corp*., 676 F.3d 542, 547 (6th Cir. 2012). Plaintiffs argue that Michigan's "catchall" six-year statute of limitations applies, which would render their claims timely, because they are proceeding under a statutory cause of action not governed by any of the other specific statutes of limitation. NTVB argues alternatively in a separate motion that this question should be certified and presented to the Michigan Supreme Court for decision, as the Michigan Supreme Court has yet to address which statute of limitations applies to PPPA claims. The Court will address these arguments in turn.

## 2. Discussion

Plaintiffs argue that their claims arise from events that happened before July 31, 2016, when the PPPA was amended to limit the damages available in PPPA claims to actual damages. Applying a six-year statute of limitations would allow Plaintiffs to pursue claims dating back to February 17, 2016.

NTVB argues that the statute of limitations for claims of personal injuries from invasion of privacy under M.C.L. § 600.5805(2) should apply to this action. In support, NTVB cites cases involving PPPA claims where the three-year statute

28

was applied including *Edwards v. Hearst Commc'ns, Inc*., No. 15-cv-9279, 2016 WL 6651563, at *1 (S.D.N.Y. Nov. 9, 2016) and *Boelter v. Hearst Commc'ns, Inc*., 269 F. Supp. 3d 172, 187 (S.D.N.Y. 2017), as well as cases where the present Plaintiffs' counsel has advocated for application of the three-year statute of limitations, *Markham v. Nat'l Geographic Partners, LLC*, No. 1:19-cv-00232, (W.D. Mich.), ECF No. 26 at PageID.135 (December 17, 2019); *Rentola v. Dow Jones & Co., Inc*., No. 4:20-cv-11589 (E.D. Mich.), ECF No. 12 at PageID.196 (September 8, 2020); *Boelter v. Hearst*, No. 1:15-cv-03934 (S.D.N.Y.), ECF No. 163 at PageID.44 (May 1, 2017).

However, the cases applying a three-year statute of limitations to PPPA claims did not consider arguments that the six-year statute of limitations should apply, and the cases where Plaintiffs' counsel advocated for the three-year statute of limitations (or, more accurately, assumed it governed) came before any of their claims would be barred by a three-year statute of limitations, and before the pivotal Sixth Circuit case of *Palmer Park Square, LLC v. Scottsdale Ins. Co*., 878 F.3d 530 (6th Cir. 2017).

In *Palmer Park*, the Sixth Circuit held that a statutory claim for penalty interest was governed by the six-year statute of limitations at M.C.L. § 600.5815 because it did not arise under the underlying insurance policy or under injury from a traditional tort. M.C.L. § 600.5813 is the "catch all" limitation, which states:

"All other personal actions shall be commenced within the period of 6 years after the claims accrue and not afterwards unless a different period is stated in the statutes."

In so holding, the Sixth Circuit relied upon two Michigan Court of Appeals cases, *Dep't of Env't Quality v. Gomez*, 318 Mich. App. 1, 22 (2016) and *DiPonio Const. Co. v. Rosati Masonry Co.*, 246 Mich. App. 43, 56 (2001). In *DiPonio*, the court stated that "a civil cause of action arising from a statutory violation is subject to the six-year limitation period found in § 5813, if the statute itself does not provide a limitation period." 246 Mich. App. at 56. In reaching this conclusion, the court first concluded that the statutory violation in question, a civil action for violation of the Michigan builders' trust fund act stemming from nonpayment from a contractor to a subcontractor, was distinguishable from claims for fraud, breach of contract, and injury to persons or property. *Id*. at 50-54. The *Gomez* court, relying on *DiPonio* and *Att'y Gen. v. Harkins*, 257 Mich. App. 564, 570-71 (2003), found that where "no period of limitations [was] expressly applicable to actions brought under the [Natural Resources and Environmental Protection Act], the general limitation provisions of § 5813 appl[ied]." 318 Mich. App. at 23.

Since *Palmer Park*, district courts in the Eastern and Western Districts of Michigan have agreed that "the six-year statute of limitations in [M.C.L.] § 600.5813 governs a PPPA claim." *Krassick v. Archaeological Inst. of Am*., No.

2:21-cv-180, 2022 WL 2071730, at *5 (W.D. Mich. June 9, 2022) (Jarbou, J.); *see also Pratt v. KSE Sportsman Media, Inc. d/b/a Outdoor Sportsman Grp., Inc*., 586 F. Supp. 3d 666, 673 (E.D. Mich. 2022) (Ludington, J.); *Nashel*, 2022 WL 6775657, at *3-4 (Murphy, J.); *Hall v. Farm Journal, Inc*., 2:21-cv-11811, ECF No. 26, PageID.718 (E.D. Mich. Apr. 5, 2022) (Lawson, J.). As the district court in *Pratt* explained:

> After the Michigan legislature amended the PPPA, a few federal courts released opinions that assumed the three-year statute of limitations from § 600.5805(2) applied to the PPPA. *See, e.g.*, *Edwards v. Hearst Commc'ns, Inc.*, No. 15CV9279ATJLC, 2017 WL 6458612, at *7 (S.D.N.Y. Dec. 18, 2017); *Boelter v. Hearst Commc'ns, Inc.*, 269 F. Supp. 3d 172, 189 (S.D.N.Y. 2017); *Edwards v. Hearst Commc'ns, Inc.*, No. 15CV9279ATJLC, 2016 WL 6651563, at *1 (S.D.N.Y. Nov. 9, 2016).

> But those opinions assumed that the three-year statute of limitations applied because the parties in those cases did not contest the issue. Indeed, at that time, unlike now, there was no shorter statute of limitations that a defendant might have raised as an affirmative defense.

586 F. Supp. 3d at 674. The district court found that it was bound by the Sixth Circuit's decision in *Palmer Park*, which "carefully analyzed Michigan precedent to hold that a six-year statute of limitations applies to statutory causes of action, like the PPPA." *Id*.

Similarly, in *Krassick*, the district court found that while "such a right is similar in kind to rights protected by the common-law tort of invasion of privacy, the right to privacy in one's reading materials is nonetheless the creation of a

statute; it did not exist under common law." 2022 WL 2071730, at *3 (citation and internal quotation marks omitted). In *Nashel*, the district court undertook a similar analysis, relying in part on *Krassick* and adding that "based on the Court's research, no Michigan case filed before 1989 (the PPPA's effective date) included a tort invasion-of-privacy claim based on the right to privacy in one's reading materials or the dissemination of one's name and address." 2022 WL 6775657, at *4.

While these district court cases are not binding, *see Pratt*, 586 F. Supp. 3d at 674, they are persuasive, and NTVB's attempts to distinguish *Palmer Park* are unavailing. NTVB argues in its reply that the analysis must go beyond whether the claim at issue is statutory or not. This is clear. But the Eastern and Western District cases cited above have analyzed this issue and properly found that the PPPA creates a cause of action that is distinct from those to which other statutes of limitations may apply. *See Perlin*, 237 F. Supp. 3d at 640 (noting that "[w]hen the Michigan legislature enacted the [PPPA], [it] *created a new right to privacy*") (emphasis added).

Furthermore, in comparison to Michigan Court of Appeals cases, the PPPA is further from a traditional tort than other statutory causes of action that have been found subject to § 5813. For instance, in *DiPonio, supra*, an action to recover unpaid debt from a contractor to a subcontractor brought under the Michigan

32

builders' trust fund act was distinguished from both a breach of contract claim (despite a contract existing between the parties) and a claim for injury to persons or property. 246 Mich. App. at 56. So, while certain statutory claims may be subject to statutes of limitation applicable to traditional tort claims, Michigan law dictates that statutes that create new rights and establish claims that could not have been brought before their passage are governed by the "catch all" statute of limitations at § 5813.

NTVB attempts to distinguish these cases by noting that another Sixth Circuit decision, *Dabish v. McMahon*, 818 F. App'x 423, 427 (6th Cir. 2020) (unpublished opinion), applied a three-year statute of limitations for a statutory claim under Michigan's Ethnic Intimidation Act, M.C.L. § 750.147b. However, in *Dabish*, there was no discussion of which statute of limitations should apply to the statute, nor any authority provided for applying the shorter period. However, M.C.L. § 750.147b, unlike the PPPA, does not appear to create new rights or causes of action at civil law; it merely amplifies the damages for previously existing traditional tort claims if they are based on another person's race, color, religion, gender, or national origin. This calls into doubt whether that act, like the PPPA, can be said to have created a new right to relief.

NTVB also cites *Hawkins v. Reg'l Med. Lab'ys, P.C.*, 415 Mich. 420, 434 (1982), in which the Michigan Supreme Court applied the two-year statute of

limitations under M.C.L. § 600.5805(4) ("Injuries to persons or property") to a statutory claim under the Wrongful Death Act. But there, the litigants were in agreement that this statute of limitations governed. *Id*. at 436. Furthermore, the court in *Hawkins* stated: "We do not construe the 1939 wrongful death act as creating an entirely new statutory cause of action unknown at common law. . . . Survival actions, which undoubtedly still exist, must now be brought under the provisions of the 1939 wrongful death act whenever non-instantaneous death results from the tortious conduct." So again, a new right and cause of action were not created by the statute in question.

As the district court in *Nashel* stated, "Defendant's framing of the PPPA as an invasion-of-privacy tort is too broad. Rather, the PPPA protects against a particular kind of invasion—the dissemination of one's reading materials, name, and address without consent. And before the PPPA, Michigan courts did not recognize the injury as a traditional tort." 2022 WL 6775657, at *4.

The undersigned agrees with the judges in this district and the Western District who have considered the issue and found that a six year statute of limitations applies. It is therefore recommended that the Court apply the six-year statute of limitations and deny NTVB's motion to dismiss based on a three-year limitations period.

2. Tolling by Executive and Administrative Order

34

Plaintiffs contend that Michigan Executive Order 2020-58 and Michigan Supreme Court Administrative Order 2020-3 operate to toll the applicable statute of limitations in this matter for 101 days.

Those orders "tolled the statute of limitations for civil cases in Michigan from March 10, 2020 to June 19, 2020." *Mackey v. Rising*, No. 20-13408, 2021 WL 4034226, at *2 (E.D. Mich. Sept. 3, 2021). Thus, " '[f]or time periods that started before [the first order] took effect, the filers shall have the number of days to submit their filings on June 20, 2020, as they had when the exclusion went into effect on March 23, 2020.' " *Bownes v. Borroughs Corp.*, No. 1:20-CV-964, 2021 WL 1921066, at *2 (W.D. Mich. May 13, 2021) (quoting Mich. Sup. Ct., Administrative Order 2020-3 (as amended May 1, 2020)).

On February 2, 2023, Plaintiffs filed a notice of supplemental authority, citing *Carter v. DTN Mgmt. Co.*, ___ Mich. App. ___, ___ N.W.2d ___, No. 360772, 2023 WL 439760, at *1 (Mich. Ct. App. Jan. 26, 2023). (ECF No. 39-1). *Carter* is a published Michigan Court of Appeals case, which is binding on state law issues such as this where there is no Michigan Supreme Court decision on point. "A federal court must accord the same precedential value to a state-court decision as it would be accorded by that state's courts." *Griffin v. Reznik*, 609 F. Supp. 2d 695, 703 (W.D. Mich. 2008). "A published opinion of the [Michigan] Court of Appeals has precedential effect under the rule of stare

35

decisis." Mich. Ct. R. 7.215(C)(2). In *Carter*, the court of appeals concluded that the Supreme Court Administrative Order applied not only to cases whose filing deadlines expired during the state of emergency, but also excluded *any day* within the state of emergency (March 23, 2020 to June 20, 2020) for the purposes of determining the applicable deadline. 2023 WL 439760, at *2-3.

Applying the six-year statute of limitations as suggested above, this tolling would move the earliest possible claims from February 17, 2016 to November 10, 2015.[12] Therefore, the undersigned recommends that the 101 day tolling period be applied to this action, allowing for claims between November 10, 2015, and July 31, 2016, to be adjudicable.

### 3. NTVB's Motion to Certify

In the alternative to finding that the three-year statute of limitations applies, NTVB moves to certify this question to the Michigan Supreme Court. Certifying an unresolved issue to the state supreme court is discretionary, *Pack v. Damon Corp.*, 03-CV-73601, 2006 WL 1109100, at *1 (E.D. Mich. Apr. 25, 2006) (citing *Lehman Bros. v. Schein*, 416 U.S. 386, 390-391 (1974)), and courts should consider whether a Federal Court of Appeals has examined the issue before certification, *Pack*, at *1 (citing *Transamerica Ins. Co. v. Duro Bag Mfg.*, 50 F.3d

---

[12] If the Court should decide that the three-year statute of limitations applies, this tolling would not save Plaintiffs' claims.

370, 372 (6th Cir. 1995)); *see also Perini/Tompkins Joint Venture v. Comerica Bank*, 2014 WL 6809810, at *2 (E.D. Mich. Dec. 2, 2014).

Here, as discussed above, the Sixth Circuit and the Michigan Court of Appeals have made findings directly relevant to § 5813's application to a novel statutory claim, and four district courts in the Sixth Circuit have found that the reasoning in those cases applied to the PPPA. None of these courts found it necessary to certify the question for the Michigan Supreme Court. Certification is not appropriate simply because the Michigan Supreme Court has not answered this specific question regarding a Michigan statute. "Federal courts are fully equipped to address state law matters, even when there is a dearth of state law authority." *Coulter-Owens v. Time, Inc.*, No. 12-CV-14390, 2016 WL 612690, at *6 (E.D. Mich. Feb. 16, 2016), *aff'd,* 695 F. App'x 117 (6th Cir. 2017).

Further, while the Michigan Supreme Court did certify a question before involving the PPPA, *In re Certified Question from United States Ct. of Appeals for Ninth Cir. (Deacon v. Pandora Media, Inc.)*, 499 Mich. 477 (2016), that was on the issue of whether a streaming music subscriber was a "customer" under the PPPA, and there appears to have been no other authority on that issue. Here, the Sixth Circuit, district courts from the Eastern and Western Districts, and the Michigan Court of Appeals have spoken on the issue and are unanimous in their conclusion that the six year statute of limitation under § 5813 should apply to claims under the

PPPA. NTVB's disagreement with these cases "does not weigh in favor of seeking a 'second opinion' from the Michigan Supreme Court." *Pack*, 2006 WL 1109100, at *2. While NVTB may think these cases were wrongly decided, that is not sufficient grounds for certification. This is particularly so because a new claim under the pre-amendment PPPA would be barred if brought today even under the six-year statute of limitations. NTVB argues that there are many cases currently pending under the pre-amendment PPPA, but regardless, the relevancy of this issue will not survive beyond those cases. Post-amendment, suits brought under the PPPA must show actual damages, which will substantially limit the number of claims brought to court. Therefore, the undersigned recommends that NTVB's motion to certify this question to the Michigan Supreme Court, (ECF No. 21), be denied.

## V. Conclusion

For the reasons stated above, the undersigned RECOMMENDS that NTVB's motions to dismiss the third amended complaint, (ECF No. 20), and to certify question to the Michigan Supreme Court, (ECF No. 21), be DENIED.

Dated: March 3, 2023                    s/Kimberly G. Altman
Detroit, Michigan                       KIMBERLY G. ALTMAN
                                        United States Magistrate Judge

## **NOTICE TO PARTIES REGARDING OBJECTIONS**

The parties to this action may object to and seek review of this Report and

Recommendation. Any objections must be filed within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Under Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 3, 2023.

s/Carolyn Ciesla
CAROLYN CIESLA
Case Manager
