# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN

ALEXUS MURPHY, MARKITTA WITCHER, and DIANE HANES, individually and on behalf of others similarly situated,

      *Plaintiffs*,

v.

ACTIVE INTEREST MEDIA, INC.,

      *Defendant*.

Case No. 2:22-cv-12159
Hon. David M. Lawson

## DEFENDANT'S REPLY BRIEF IN SUPPORT OF
## MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

Kristen C. Rodriguez
Deborah H. Renner
DENTONS US LLP
1221 Avenue of the Americas
New York, New York 10020
(212) 768-6700
kristen.rodriguez@dentons.com
deborah.renner@dentons.com

Peter B. Kupelian (P31812)
Carol G. Schley (P51301)
CLARK HILL PLC
151 South Old Woodward Ave., Suite 200
Birmingham, MI 48009
(248) 530-6336
pkupelian@clarkhill.com
cschley@clarkhill.com

*Counsel for Defendant*
*Active Interest Media, Inc.*

#3426102

Plaintiffs concede their case was filed too late even under a six-year limitations period. And they all but abandon their view that class action tolling saves their claims. Instead, they argue that the limitations period was tolled under the COVID-19 Orders. But those Orders are not applicable on their face or to federal actions. Moreover, the FAC, pled largely on information and belief, fails under Rule 12(b)(6), as held in virtual clones of this case by Judge Stephen J. Murphy, III in *Nashel v. New York Times*, 2022 WL 6775657 (E.D. Mich. Oct. 11, 2022) and most recently by the Chief Judge for the Western District of Michigan, Hala Y. Jarbou, in *Bozung v. Christianbook, LLC*, 1:22-cv-00304, slip op. (W.D. Mich. Mar. 6, 2023) (Ex. 6 hereto). This case should be dismissed with prejudice.

## ARGUMENT

### I. This Action Was Filed Too Late.

Plaintiffs admit that even under a six-year limitation period, their action is too late unless tolling applies.[1] Neither COVID nor class action tolling saves this action.

### A. COVID Tolling Does Not Apply.

One intermediate state court recently held that COVID tolling applies beyond the window of the 2020 deadlines in the COVID-19 Orders. *Carter v. DTN Mgmt. Co.*, 2023 WL 439760 (Mich. Ct. App. Jan. 26, 2023). That case, an individual slip

---

[1] Plaintiffs argue that because this Court and other federal district courts have held that a six-year limitations period applies to PPPA claims, the issue is settled. But the Michigan Supreme Court has not decided the issue, so it is far from settled.

1

and fall case, is not binding on this Court. *Horizon Lawn Maint., Inc. v. Columbus-Kenworth, Inc.*, 188 F. Supp. 3d 631, 635 (E.D. Mich. 2016) (intermediate state appellate court decisions not binding on federal courts).

Even if the Court were to follow the logic of *Carter*, that case holds that tolling is a procedural matter, not a substantive one, as Plaintiffs argue. *Carter*, 2023 WL 439760, at *4. As such, the COVID-19 Orders would not apply to federal court actions. *See Barnes v. Sun Chem. Corp.*, 164 F. Supp. 3d 994, 999 (W.D. Mich. 2016) ("*State rules of procedure* . . . usually have no effect in federal courts.") (quotation omitted, emphasis in original). The federal cases on which Plaintiffs rely—*Bownes*, *Bowles*, *Mackey*, and *Wenkel*—are inapposite because they did not consider the COVID-19 Orders as procedural in nature. (ECF No. 24, PageID.1206-07 n.12)

Federal procedural rules pertain to this action because Michigan does not permit plaintiffs to bring class actions for statutory damages in Michigan state court unless the statute explicitly authorizes a class, which the PPPA does not. MCR 3.501(A)(5). Plaintiffs thus invoked federal jurisdiction under CAFA. Because this case is governed by the Federal Rules of Civil Procedure, state court procedures, such as those embodied in the COVID-19 Orders, do not apply. And while the *Carter* court stated that it may not have the power to decide the constitutionality of the COVID-19 Orders, it determined that because those Orders

2

are procedural in nature, they are not unconstitutional.[2] *Carter*, 2023 WL 439760 at *6. Finally, *Carter* says nothing about tolling as to absent class members.

### B.  Class Action Tolling Does Not Apply.

Plaintiffs argue that the Michigan state statute on class actions would permit tolling. But, as set forth in AIM's moving brief, that court rule, MCR 3.501(F), is wholly inapplicable because this PPPA class action is not permitted under that rule, and thus is not governed by that rule.[3] Plaintiffs further contend that tolling is a substantive issue calling for the application of state law, but the *Carter* case, upon which Plaintiffs rely, says that tolling is a procedural issue, as discussed above. Finally, contrary to Plaintiffs' view, *China Agritrech* is applicable even though there has not been a denial of class certification here. *See, e.g.*, *Painters & Allied Trades Dist. Council 82 Health Care Fund v. Forest Pharm., Inc.*, 915 F.3d 1, 17 (1st Cir. 2019) (declining to toll despite no denial of class certification).

### II.  Murphy and Witcher Lack Standing.

Plaintiffs Murphy and Witcher do not deny they lack standing, and have submitted nothing to prove their standing, as is their burden. *See, Harris v. Lexington-Fayette Urb. Cnty. Gov't*, 685 F. App'x 470, 472 (6th Cir. 2017)

---

[2] AIM discusses the constitutionality of the COVID-19 Orders in its moving brief. (ECF No. 24, PageID.1208.)

[3] AIM distinguished *Boelter*, relied on by Plaintiffs, on this basis in its moving brief. (ECF No. 24, PageID.1201.)

(plaintiffs' burden to prove standing with evidence when challenged at the motion-to-dismiss stage); *Myslivecek v. FCA US LLC*, 2022 WL 17904526, at *7 (E.D. Mich. Dec. 23, 2022) (holding plaintiffs did not provide enough evidence to establish standing). And Plaintiffs are not entitled to discovery to survive a motion to dismiss, especially where they should possess information related to their own standing. *See, e.g., Life for Relief & Dev. V. Charter One Bank, N.A.*, 2013 WL 3810255, at *3 (E.D. Mich. 2013) (plaintiff cannot use discovery to craft complaint).

### III. The FAC Is Inadequately Pled.

Plaintiffs contend that they need not prove their claims at this stage. But the Court need not accept as true conclusory allegations, legal conclusions, or unwarranted factual inferences. *Davis v. Hartford Life & Accident Ins. Co.*, 980 F.3d 541, 550 (6th Cir. 2020). Plaintiffs further contend that their allegations are similar to those in other cases that have survived dismissal. But of the five cases they cite, four do not even consider whether the complaints pled sufficient allegations to establish an actionable disclosure under the PPPA.[4] The remaining case, *Horton v. GameStop, Inc.*, relied on a website printout dated less than two months prior to the

---

[4] *See Boelter v. Hearst Commc'ns*, 192 F. Supp. 3d 427, 452–54 (S.D.N.Y. 2016) (finding PPPA exception did not warrant dismissal); *Moeller v. Am. Media, Inc.*, 235 F. Supp. 3d 868, 874 (E.D. Mich. 2017) (addressing standing and unjust enrichment claim); *Perlin v. Time, Inc.*, 237 F. Supp. 3d 623, 639–43 (E.D. Mich. 2017) (same); *Boelter v. Advance Mag. Publishers Inc.*, 210 F. Supp. 3d 579, 587–590 (S.D.N.Y. 2016) (deciding standing, jurisdiction, unjust enrichment and constitutionality).

time the complaint was filed. 380 F. Supp. 3d 679, 682 (W.D. Mich. 2018). Here, in contrast, two district courts have now held in virtually the same case that a 2022 data card cannot create a reasonable inference that AIM subscriber lists were sold in 2016. *Nashel*, 2022 WL 6775657, at *5; *Bozung*, slip op. at 8. Rather, just as in *Nashel* and *Bozung*, the 2022 data card is from an irrelevant time period and cannot give rise to a plausible inference of disclosure in 2016, especially given that the allegations pertaining to the data cards are pled on information and belief, which are the kinds of conclusory allegations *Iqbal* and *Twombly* "told us to ignore when evaluating a complaint's sufficiency." (*Bozung*, slip op. at 10.)

Plaintiffs attempt to distinguish *Nashel* because the data cards cited there pre-dated rather than post-dated 2016, but that is a distinction without a difference.[5] Plaintiffs have alleged nothing from 2016. Plaintiffs' argument that the counts listed on the 2022 data card are "cumulative" does not mean that Plaintiffs' data was disclosed in 2016.[6] As the *Bozung* Court reasoned: a 2022 data card "does not mention buyers from 2016 or earlier." (Slip op. at 8.)

---

[5] Plaintiffs erroneously describe allegations from the *Nashel* complaint that are not in the AIM complaint, *e.g.*, alleged privacy policies. (ECF No. 26, PageID.1258.)

[6] Contrary to Plaintiffs' assertion, AIM does not concede it is reasonable to infer that AIM was responsible for disclosing PRI based on a NextMark data card or that the data card is evidence of disclosure of any PRI whatsoever. Moreover, also contrary to Plaintiffs' attempts to broaden the scope of the PPPA's prohibitions, the statute on its face only prohibits disclosure of information concerning the *materials* being purchased, leased, rented, or borrowed. M.C.L. § 445.1712. Indeed, according to

5

Similarly, Plaintiffs urge the Court to accept their conclusory information and belief allegation that a "substantially similar" data card was available in 2016, but one which they now admit cannot be accessed through the webpage they cite and which they do not otherwise attach. (ECF 26, PageID.1271.); *see Nashel*, 2022 WL 6775657, at *4-6 (holding the court would not rely on a "legal conclusion" to cure timing issues with the alleged data cards). Judge Jarbou squarely rejected this same allegation in *Bozung*, finding that "it makes no sense that a datacard from 2016 was the 'same' as the one from 2022." (Slip op at 9.)

And while Plaintiffs contend the source of subscriber information had to be AIM because of the "Masterfile" designation on the data card, that is not pled, requires pure speculation from the Court, and is contrary to Plaintiffs' other allegations that there are numerous sources from which data aggregators, brokers and others acquire information on consumers.[7] (*See,* FAC, ¶¶ 29-41.); *see Nashel*, 2022 WL 6775657, at *5 ("nothing on the data cards explains how the list brokers received Defendant's subscription list").

---

Plaintiffs' own allegations, the way AIM violated the PPPA was by purportedly disclosing "their full names, *titles of publications subscribed to*, and home addresses" to third parties. (FAC ¶¶ 10, 65-80.)

[7] Nor does *Horton*, 380 F. Supp. 3d at 682, support the notion that the "Masterfile" designation on the data card means that information was disclosed by AIM. Plaintiff's reliance on *Cain v. Redbox Automated Retail, LLC*, is also unavailing because no one disputes well-pled allegations must be taken as true. 981 F. Supp. 2d 674, 685 (E.D. Mich. 2013).

6

Moreover, while Plaintiffs claim the *Nashel* decision is an "outlier," *Bozung* has now been decided consistent with *Nashel*, and at least one other court, *Wheaton v. Apple Inc.*, 2019 WL 5536214, at *4 (N.D. Cal. Oct. 25, 2019), is aligned with *Nashel*. Contrary to Plaintiffs' arguments, the *Wheaton* decision did not turn on the type of media at issue. Rather, the court held that the allegations of unlawful disclosure, akin to those here, could not support a plausible PPPA claim. *Id.*

Moreover, while Plaintiffs repeat their allegation of an "uptick in junk mail" as proof of disclosure, as argued in AIM's opening papers, an alleged "uptick in junk mail" without a causal connection to an alleged disclosure by AIM is a conclusory allegation that should not be credited by the Court. (ECF 24, PageID.1216.)

Plaintiffs contend no plaintiff could ever allege enough for a plausible allegation of disclosure. But that is not true, and the Court cannot ignore the *Iqbal* standard. *See, e.g.*, *Remijas v. Neiman Marcus Group, LLC*, 794 F.3d 688 (7th Cir. 2015) (in data breach context, alleging specific injuries close in time to breach).

## CONCLUSION

For the foregoing reasons and those set forth in AIM's moving papers, the FAC should be dismissed with prejudice.

Date: March 10, 2023            Respectfully submitted,

                                /s/ *Kristen C. Rodriguez*
                                DENTONS US LLP
                                *Counsel for Defendant*

7

## **Certificate of Service**

I hereby certify that on March 10, 2023, a copy of the foregoing document was filed electronically and served by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.

/s/ *Kristen C. Rodriguez*
Kristen C. Rodriguez